Council. May it please the Court. Leigh Ann Martinez representing the appellant Roberta Whiting. I'd like to reserve two minutes for rebuttal. May it please watch the clock. Of course. The issue in this case is whether the ALJ provided clear and convincing reasons in rejecting plaintiff's testimony regarding her inability to use her left upper extremity and performing her past work as a housekeeper. The ALJ in this case provided one reason, and that is that the medical records did not articulate any specific restrictions in the use of her arm or reflect concerns about bending. First, under Social Security Ruling 96-8P, it is clear that a residual functional capacity assessment must be based on all of the relevant evidence in the record, which includes the effects of treatment. Second, I want to address Bayless, which this Court has requested I come prepared to discuss. Here, this case is unlike Bayless. The issue in this case is whether the ALJ provided legally sufficient reasons for rejecting plaintiff's testimony. Bayless was not a case about whether claimant's testimony was properly rejected. In Bayless, it doesn't appear that the ALJ's credibility determination was even an issue that was appealed in before the Court, which is not surprising given that the ALJ in that case wrote a 45-page detailed decision which ultimately concluded that the plaintiff's statements were grossly exaggerated. So there were there were no record support as in Bayless for Ms. Whiting's purported limitations. The thing that confused me was that she didn't say I'm in pain or my arm is stiff and I can't bend it. What she said is I understand that I'm supposed to keep my arm straight. So she was relating her understanding of what she was supposed to do as part of her treatment. So she wasn't giving her own subjective views of her pain or her limitations. Isn't that right? That seems to be somewhat different than the cases where the claimant is talking about their own views of their limitations. Well, what she had testified to was that she was instructed to keep her arm straight. She couldn't raise it too high. She testified that she uses her right arm for everything and that if she were to perform her work as a housekeeper, she would only have one to work with and that she wouldn't even be able to unload the equipment from her car to her. Didn't she say that as I read the testimony she said that because of her understanding that she had to keep her arm straight, which it seemed from context that she thought that was what the doctors wanted her to do or she thought she had to keep her ankles out of the compression sleeve. It didn't seem like it was something beyond that. Well, I don't think that her subjective statements regarding what she was instructed to do and her limitations that are stemming from that should be treated any differently than her subjective limitations that she would experience from pain. And what is that based on? Because the ALJ says look there's there's nothing in the the doctors want you to keep your arm straight. It isn't it isn't like a pain thing where she says well I've got more pain and I can't keep I can't bend it because of my pain and then we have our our pain jurisprudence. But here it was you know her understanding of medical instructions and there was nothing corroborating that there was no evidence that that was the medical instructions. Just seems different than our our sort of testimony testimony based jurisprudence. Well, I would your honor, I would disagree that there was absolutely nothing in the record regarding descriptions of what she was or was not supposed to do with the compression sleeve. There were multiple references in the record to specific goals that were attributed to to the sleeve and and in there at nearly every visit that she had with with her physical therapist and at the lymphedema clinic. It does reference that there is specific care and where instructions that she was provided with. The specific instructions were not included. Obviously, in the record, which is why we're here, which is the value of her testimony. But is that her burden? Doesn't she have the burden of showing the limitations? He has. Yeah, she has the burden of proving that she has a medically determinable impairment with objective evidence, which she has done here. There is no evidence that she is required or no support that she is required to show with objective evidence that she has the severity of the conditions that she is alleging. That is the value of a person's testimony. And it's interesting because it really puts the claimant in an impossible situation, because if she were not to wear the sleeve as she's testifying, she was instructed to, then that would be a noncompliance issue. No, no. I mean, she could have entered into the evidence, the directions, the care instructions or the directions from the doctors or any have an expert testify that that's the correct wearing of the sleeve. But she didn't do that. That is true. Unfortunately, those types of instructions are not always included in the treatment notes. And I think that that would really go to the fully and fairly developing the record argument that we that we were submitted. So Council, let me let me because I was asking about that specifically. In your brief, you say kind of as an alternative, we should remand this case for further fact finding. What further fact finding? If we if we did do that, what would be the goal of that? What would you be able to come back to the district court with the show should change things? Well, the issue in this case is the judge. The LJ appeared to not believe her statements with respect to what she was supposed to do with the sleeve and that she was instructed to keep it straight to not move it around much. So I think that a medical X if if this court does not find that the the LJ erred in discrediting those statements from her, I think that it would be appropriate to remand the case. It would have been very easy for the judge in that case to request a medical expert's testimony to request a consultative examination to determine whether or not, in fact, she she should not bend her arm or use it. Um, you know, I don't really I cannot the this case. I do not think that it is indistinguishable from Moissa. The facts in the Moissa, I believe, are much more clear, clearly synonymous with this case. Um, than in Bayless, where in Bayless is a subjective pain case where there's more pain. I mean, we have a completely different jurisprudence for subject things that are entirely subjective and can't be proved by any subjective evidence, which is what Moissa was. Well, and again, I don't believe that subject a person's subjective, uh, testimony regarding their pain should be treated any differently than a person's subjective testimony regarding instructions that they've been given from their from their we said as to symptoms such as pain, it is quite possible no objective medical evidence can be produced because pain is completely a subjective phenomenon and cannot be objectively verified or measured. You're not saying whether or not the instructions for using a compression sleeve, um, are not susceptible to objective medical evidence, are you? Well, I think it might be easier to think of this case comparing it to something like, um, a prosthetic, for example, if a person was only a person was prescribed a prosthetic and they were instructed to only wear it a certain number of hours in a day and that that hour was not actually put into the medical record. Would the judge not be instructed or required to consider statements that the doctor had told the claimant about the number of hours they're supposed to wear a prosthetic? I just don't find that this is any different. And again, it puts the claimant in an impossible situation. Either they comply with treatment, um, what she is saying that she had done or be non compliant with treatment and have her statements rejected. For that reason, you want to save the remaining time for a rebuttal? Yes. Thank you. All right, we'll hear from the other side. Thank you, Your Honor. Good morning. May it please the court. I'm David Burdett, representing Commissioner Kiyokazu in the matter. Um, with regard to I want to kind of depart from the order that I had planned, and I kind of want to address the latter point first with regard to, uh, the claimant allegedly being put in an impossible position. It's not an impossible position at all. Uh, the A. L. J. Would have the claimant refer to evidence that the claimant submitted on the record. And in fact, the importance of the case goes goes beyond the particulars of Miss Whiting's potential three more years of disability benefits here. A. L. J. Is are put in an impossible position if they are expected to credit without evidence any assertion that is made at a hearing regarding medical instructions that are allegedly given on a limitation that is allegedly due to a side effect. And that is where I think the correct, uh, the court was correct to point to Bayless. Uh, if any claimants can come to a hearing, if the rule is that any claimant can come to a hearing and make assertions about the limitations that they are put under by their doctor's instructions, which are not reflected in the record. And if the rule is that the A. L. J. Must credit those or else it is automatically a remand of court level, then A. L. J. Is are in an infinite loop of always remand and benefits are available for the asking because everyone is going to come to a hearing and say, Well, I have the following constellation of limitations question. What evidence is there in the record? Answer my own testimony. It's a It's a circular argument. They cannot base a without any supporting evidence in the record. Council, let me ask you about that point. I mean, there's no dispute in this particular case that she needs to wear the sleeve and the A. L. J. Acknowledged that and that she received instructions on how to wear the sleeve. So the A. L. J. Um, when the A. L. J. Said that she could, uh, enter arm news at one third or less of the work day. What is that based on? It's based, Your Honor on. That's a That's an excellent question, and it's based on his interpretation of the evidence that is in the record. Now, we all agree that she had lymphedema. That's based on medical evidence in the record. We all agree that she had to wear us the sleeve and the glove also, and that's based on the record. She asked for these. These two points kind of dovetail because she asked for further development in the in the alternative. Well, at the hearing, and this this is, I hope, responsive to your question, Your Honor. If I can, I can get this up at the hearing. Um, through her representative, she asked for the record to be held open for more evidence. The A. L. J. Said Fine. That's a pages 28 to 30 of the hearing. The record was held open. She submitted more evidence. The further evidence that was submitted, and this is apparently all that she had was exhibit 10 F, which is exactly what the A. L. J. Built the administrative decision on as to this point and pages 78 and 79 of the record. So she she asked for the opportunity to have to have the record fully developed. The A. L. J. Left the record open. She put in all the evidence that she had. The A. L. J. Looked directly at that evidence and responded to in the decision and built the decision on that evidence. And what the evidence was was this in January of 2017 when she goes to the lymphedema. And this is why you're on this is why the A. L. J. Made the decision that the R. S. E. Finding included limit to occasional or less use of the left arm, the non dominant left arm. That is, one third of the day or less because she had mild lymphedema as of January 2017, for which she went in. Uh, the pain associated with lymphedema was resolved by massage. Follow up with Dr. Chitali in March of 17. Her her lymphedema is improved. Um, Pat, she said on March 22nd, Dr Chitali said she had lymphedema left arm past tense and is wearing a lymphedema sleeve and glove. Dr Chitali puts her over for the next follow up to June of 2017. June of 2017. Dr Chitali characterizes left arm lymphedema is able to improve. That's it. And the A. L. J. Recently concluded from that that a limitation to occasional or use left are occasional or less use. That is, one third of the day or less use of the left arm with the sleeve was the thing that she could do. And that's that's the basis for the A. L. J. Is finding on it. So, Council, I understand your argument as the deficits in her case. What should she have done? If, for example, if if if she wants to get where she says he now wants to be, what should she have done? Trying to understand what the gap is from your perspective. What evidence should she put in the record? Okay, thank you, Your Honor. Yeah, if she wanted to, if she wanted to make an assertion that, um, she had particular limitations beyond the need to merely wear the sleeve, then she should have had, um, a record from her doctors, and she had very many opportunities to go to the doctor and get this clarified, explaining this. If if this is the case explaining that I cannot bend my arm, I have to hold my arm straight at all times. That should have been put on the record in a note from the doctor. If if she wanted to compel the A. L. J. To compel the A. L. J. To make that finding from the evidence, then that information should have been in evidence. And it's your contention that that because she has the burden to put forth this evidence and she failed to do so that that in a sense, that's the end of it. Yes, that's right, Your Honor. That is the end of it. And I think that I don't think that's very controversial. I think that goes all the way back to the Supreme Court's decision in Bowen versus you. So with that, I mean, in essence, that is our case. I could I could go further on the on the medical findings, but if the court has no further questions, we would just request that the court please be mindful of, as I know you are in all cases of the implications of your ruling here. Because if the rule is again, if the rule is that any claimant can come into a hearing and testify to a consolation of limitations that are not supported by anything but their own testimony due to whether it be a prosthesis or whether it be medications that allegedly caused drowsiness as it was in Bayless or whether it be because of the allegation that they have to not only wear a sleeve but hold their arm a certain way all the time. And if that is not supported by anything in the record at all, but the ALJ has to credit them, then every case is an automatic remand. And you know that that can't be that cannot be the rule. So, Counsel, I did have a I did some bending was okay, but full extension was not okay. And I'm a little I'm a little unclear. Was that in the record? How did the ALJ come to that conclusion? Well, the matter was the ALJ asked the VE supposing she had to the colloquy between the ALJ and the VE as to what is necessary in the housekeeper job. I've touched on that point. And that's at 43 of the I'm being responsive here. Well, no, no, I just want to be because I think one of the deficits you've explained in her case is that she didn't have the medical testimony saying, look, this is what she can and can't do with the sleeve. And then she's she's effectively substituting whatever the doctor would say. And the whole question is, is that how do we weigh her testimony? Is it pain testimony? Or is it functionality testimony? But it seems that the ALJ may have made some functionality determination versus bending versus extending. And I'm just kind of curious, if there's no evidence in the record as to what she can do other than her own testimony, how did the ALJ come to that conclusion? I think the ALJ came to that conclusion by interpreting the records that exhibit 7F and 10F that he that he referred to in 78 and 79. I think that's the answer to that one, Your Honor. Thank you. If there are no further questions, we would respectfully request that the decision be affirmed. Okay, we thank you for your argument. I believe you have a few seconds for rebuttal. We are not requesting that the claimant's testimony be credited when there's no evidence supporting it. In this case, there is evidence supporting the fact that the claimant has lymphedema that requires use of a compression sleeve. There is evidence in the record that that indicates that she was instructed on a specific way to wear it. If a claimant's testimony is not to fill in gaps like these, what is the point of hearing testimony? Also, we're not asking that testimony be credited. All we're asking is that if a judge is going to discredit a claimant's statement, they provide clear and convincing reasons for doing so. And under Ninth Circuit precedent, rejecting it strictly on the basis of a lack of corroborating objective evidence is not legally sufficient. And that is Ninth Circuit precedent, what has been historically held. And I would note that the commissioner did not cite to a single case that had contradicted that holding. In fact, the one case that they decided to, which was Batson, um, was a completely different case. Batson held that the claimant's testimony could not be properly rejected on the base of lack of corroborating evidence, coupled with other factors. And in Batson, the ALJ held that, um, or noted that the not one, but two doctors in that case found the physical examination findings were completely inconsistent with the person's testimony and cited to activities that were inconsistent with the person's testimony. You're over time now. Please wrap up. Okay. Um, and I think that that point is important because the ones case that they cited to to support their argument is not synonymous with this case. Had the ALJ provided other reasons, Your Honor, for rejecting the claimant's case. But it goes against Ninth Circuit precedent held over and over since Bayless that it was proper to reject a person's testimony strictly on the basis of lack of corroborating objective evidence. So we asked that this court reversed the case remand for proper consideration of the claimant's testimony and alternative that this case be remanded back to the ALJ to fully and fairly develop the record with respect to the claimant's left upper extremity impairments by requesting a medical expert or a consultative examination to, um, address that issue. Thank you, Your Honor. All right. Um, the case of Roberta Whiting, the, uh, Cololo Kia's posse is submitted.
judges: IKUTA, NGUYEN, OWENS